**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| DONALD C. THOMAS, | ) | |
| individually and on behalf of all | ) | Case No. 10-3139-CV-S-ODS |
| others similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MID-MISSOURI BANK, | ) | FILED ELECTRONICALLY |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S UNOPPOSED**
**MOTION FOR FINAL APPROVAL OF SETTLEMENT AGREEMENT**

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure ("Rule 23"), the Named Plaintiff, Donald C. Thomas, by and through his undersigned counsel, respectfully requests final approval of the proposed Class Action Settlement embodied in the Settlement Agreement that this Court preliminarily approved in its Order dated December 9, 2010 ("Preliminary Approval Order").[1]

As set forth below, the settlement is fair, adequate and reasonable and satisfies all applicable requirements for final approval. Consistent with the Preliminary Approval Order, a copy of the Summary Notice of Class Action Settlement was published twice during two consecutive weeks in the following newspapers: *Bolivar Herald-Free Press; Cedar County Republican; Clinton Daily Democrat; El Dorado Springs Star; El Dorado Springs Sun; The Joplin Globe; Lawrence County Record; Lebanon Daily Record; The Perry County Republic-Monitor; Springfield News-Leader;* and, *Webb City Sentinel.*[2]

---

[1] The Settlement Agreement was attached as Exhibit 1 to the Joint Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Motion").

[2] *See* Declaration of Bruce Carlson in Support of Motion for Final Approval of Settlement Agreement ("Carlson Declaration") attached to the Final Approval Motion as Exhibit 1 at ¶ 4, Exhibits A-K.

Furthermore, as required by the Class Action Settlement Agreement, ATM Notice was displayed on the ATMs at Issue for a period of forty-five days commencing on or before the Notice Publication Deadline, directing customers to view the full class notice at Class Counsels' website.[3]

In addition, the Full Notice of Certified Class Action Settlement was published on Class Counsels' website – www.carlsonlynch.com during that same period of time.[4]

Finally, as required by the Preliminary Approval Order, the parties prepared and disseminated a press release to television stations and newspapers in Springfield and Joplin, Missouri, announcing the proposed Settlement.[5]

The last day to file objections to the Settlement was February 15, 2011. This was also the last day to request exclusion from the Class. No objections have been lodged against the Settlement by class members, and no class member has requested exclusion from the Settlement Class.[6]

I.    **BACKGROUND OF THE LITIGATION**

Class Representative, Donald Thomas, filed this putative class action on April 20, 2010, alleging that Defendant Mid-Missouri Bank (the "Bank" or "Defendant") violated the Electronic Funds Transfer Act , 15 U.S.C. § 1693 *et seq.* ("EFTA"). Specifically, Plaintiff alleges that Defendant violated 15 U.S.C. § 1693b(d)(3)(C) which states, in relevant part:

(C)  Prohibition on fees not properly disclosed and explicitly assumed by the consumer

---

[3] *See* Carlson Declaration at ¶ 4.

[4] *See* Carlson Declaration at ¶ 4.

[5] *See* Carlson Declaration at ¶ 4.

[6] *See* Carlson Declaration at ¶¶6-8

No fee may be imposed by any automated teller machine operator in connection with any electronic fund transfer initiated by a consumer for which a notice is required under subparagraph (A), unless—

(i)     The consumer receives such notice in accordance with subparagraph (B) . . . .

In turn, Plaintiff alleges that Defendant violated the notice requirement set forth at subparagraph B (15 U.S.C. § 1693(d)(3)(B)), to wit:

 (B)  Notice requirements

(i)     On the machine

The notice required under clause (i) of subparagraph (A) with respect to any fee described in such subparagraph shall be posted in a prominent and conspicuous location on or at the automated teller machine at which the electronic fund transfer is initiated by the consumer.

The parties ultimately executed a Class Action Settlement Agreement ("Settlement Agreement") on or about December 1, 2010.[7]  Pursuant to this agreement, the Parties have agreed to the certification of the following Class, for settlement purposes only:

All persons who were not banking customers of Mid-Missouri Bank and who were charged or assessed any transaction fee, including any "terminal owner fee," surcharge or ATM transaction fee of any kind, in connection with any electronic fund transfer or balance inquiry at any of the ATMs at Issue on or before the date of the Settlement Agreement.

## II.     THE TERMS OF THE SETTLEMENT

In the interest of avoiding protracted and costly litigation, the Parties have agreed to a proposed settlement with the following basic terms:

(1)     Defendant has agreed to create a settlement fund in the amount of $260,000.00 to be disseminated on a *pro rata* basis to every Participating Class Member who submits a claim

---

[7] A copy of the Settlement Agreement is appended to the Joint Motion for Preliminary Approval as Exhibit 1.

after the dissemination of notice, with any individual Participating Class Member's share being capped at $100.00.

(2)     Defendant has also agreed that any unclaimed amount of the Settlement Fund will be donated, on a *cy pres* basis, with half being distributed to the Community Foundation of the Ozarks and and half being distributed to Boys Hope-Girls Hope.  No unclaimed amount of the Fund shall revert to the Defendant.

(3)     Defendant has agreed to pay Class Counsel a single payment of $85,800 for attorneys' fees and allowable litigation costs and expenses.

## III.  FEDERAL DISTRICT COURTS HAVE ROUTINELY APPROVED ANALOGOUS PROPOSED SETTLEMENTS OF CLAIMS ALLEGING VIOLATIONS OF THE EFTA'S ATM FEE DISCLOSURE REQUIREMENTS

Final approval and final judgment have been entered in connection with similar class-based settlements of EFTA ATM fee disclosure actions.  *See, e.g., Howard v. The Canandaigua National Bank and Trust Company*, 09-cv-6513 (W.D. N.Y.)(Telesca, J.);  *Parker v. Suntrust Bank*, 09-cv-706 (M.D. Tenn.)(Echols, J.);  *Parker v. First-Citizens Bank and Trust*, 09-cv-00588 (M.D. Tenn.)(Wiseman, J.);  *Popovic v. Dollar Bank*, 10-cv-432(W.D. Pa.)(Fischer, J.);  *Nolf v. Allegheny Valley Bank of Pittsburgh*, 09-cv.-645 (W.D. Pa.)(Bissoon, J;  *Dover v. GNC Federal Credit Union*;  09-cv-810 (W.D. Pa.)(Bissoon, J.);  *Dragotta v. Northwest Bancorp, Inc.*, No. 09-cv-632 (W.D. Pa.) (Fischer, J.);  *Jackman v. Global Cash Access Holdings, Inc.*, No. 09-cv-897 (W.D. Pa.) (McVerry, J.);  *Popovic v. USX Federal Credit Union*, 09-cv-631 (W.D. Pa.)(Hay, J.);  *Polevoy v. Devon Bank*, 08-cv-4822 (N.D. Ill.)(Kennelly, J.);  *Stone et al. v. Corus Bank, N.A.*, 08-cv-1746, (N.D. Ill.)(Bucklo, J.);  *Anthony v. Fifth Third Bank (Chicago)*, 08-cv-4359, (N.D. Ill.)(Schenkier, J.);  *Arbelo, et al. v. Charter One Bank*, 08-cv-1516, (N.D. Ill.)(Cox, J.);  *Escalante v. Lincoln Park Savings Bank*, 08-cv-6152 (N.D. Ill.)(Ashman, J.);

4

*Bruner v. AmericaUnited Bank & Trust Company*, 08-cv-124, (N.D. Ill.)(Nolan, J.); and, *Marsh v. ATM Capital Management Inc.*, 07-cv-5808, (N.D. Ill.)(Coar, J.). All of these cases were settled on terms similar to those in the proposed settlement that is now before this Court.

IV. **THE PROPOSED CLASS SHOULD BE FINALLY CERTIFIED FOR SETTLEMENT PURPOSES**

A. **THE PROPOSED NOTICE TO PUTATIVE CLASS MEMBERS IS APPROPRIATE**

In the Preliminary Approval Order, the Court stated, in relevant part:

> [T]he Court reserves judgment regarding the efficacy of notice for the class. In this regard, the parties should be expected to provide the Court with an estimate of the number of potential class members so the Court can compare that number to the number of Participating Members (i.e. the number of people submitting claim forms) . . . .

First, while the Court has broad discretion regarding what constitutes reasonable notice under Fed. R. Civ. P. 23(e), the touchstone of appropriate notice that is sufficient to satisfy due process is practicability, not efficacy. A recent case from the Northern District of Illinois includes an extensive analysis of this issue in a context where the notice issue is virtually identical to the issue in this case (i.e. the defendant possessed only the Personal Account Number—or PAN number—from the class members' credit or debit cards, but did not possess name and address data for the class members, thereby precluding direct mail notice).

Specifically, in *Shurland v. Bacci Cafe & Pizzeria*, No. 08-C- 2259, 2010 WL 4513663, *3 (N.D. Ill., Nov. 2, 1010) the court addressed the same notice issues that have been identified by this Court in an opinion addressing class certification of claims under the Fair and Accurate Credit Transactions Act ("FACTA"), as follows:

> The due process inquiry in a Rule 23(b)(3) class, therefore, is whether the requirements of Rule 23(c)(2) have been met. Rule 23(c)(2)(B) explains that for Rule 23(b)(3) class actions such as this one, 'the court must direct to class members the best notice that is practicable under the circumstances, including

5

individual notice to all members who can be identified through reasonable effort,' and explain the details of the action to those members, including the opportunity to opt out.

[D]efendant urges that because the class members are not identifiable, they cannot be provided with personal notice and an opportunity to opt out. (Def.'s Mot. To Decert. at 8.) Direct notice is indeed ideal, but the requirement of "personal notice" does not mean that each individual who is potentially a member of the class must receive actual notice of the class action. Medina v. Manufacturer's & Traders Trust Co., No. 04 C 2175, 2004 WL 3119019, at * 3 (N.D. Ill. Dec. 14, 2004) (Rule 23(b)(3) class) ("This [best notice practicable] standard can be satisfied even though a particular class member never receives actual notice.").

                    *        *        *        *

Where, as in this case, individual notice is not possible, other methods of contacting the class members may be utilized. As the Supreme Court has explained: "This Court has not hesitated to approve of resort to publication as a customary substitute in [a] class of cases where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 316, 70 S.Ct. 652, 94 L.Ed. 865 (1950) (discussing "best notice practicable" in the context of a common trust fund settlement). *Mullane* stands for the proposition that "notice by publication is not enough with respect to a person whose name and address are known or very easily ascertainable and whose legally protected interests are directly affected by the proceedings in question." *Schroeder v. City of New York*, 371 U.S. 208, 212-13, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962) (emphasis added). Though these cases predate the current version of Rule 23, the drafters of the Rule intended to incorporate the due process standards *Mullane* and *Schroeder* discussed. *See Eisen*, 417 U.S. at 173-74.

In instances where the names and addresses of class members are not easily ascertainable, notice by publication alone continues to find support in more recent case law. "When individual notice is infeasible, notice by publication in a newspaper of national circulation ... is an acceptable substitute." *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 786 (7th Cir.2004) (Rule 23(b) (3) class) ("[Individual] notice is preferable to newspaper or other collective notice but it was impossible here because [Defendant] has no record of those customers whose financial information it gave the telemarketers but who did not buy anything from the latter."). *See also In re Vivendi Universal*, S.A., 242 F.R.D. 76, 107 (S.D.N.Y. 2007) ( Rule 23(b)(3) class) ("While individual notice, where reasonably possible, is required, when class members' names and addresses may not be ascertained by reasonable effort, publication notice has been deemed adequate to satisfy due

6

process."). There is, in short, no "single formula" that describes what effort is necessary to contact and notify members of a Rule 23(b)(3) class; instead, the "type of notice to which a member of a class is entitled depends upon the information available to the parties about that person." *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1097-98 (5th Cir.1977) (Rule 23(b)(3) class).

*    *    *    *

As discussed above, notice by publication alone may be permissible when it is the best notice practicable. Plaintiff asks this court to approve a one-time publication of class notice in the Chicago Sun-Times and publication on Class Counsel's website.

In proceeding with a Rule 23(b)(3) class, 'the court must direct to class members the best notice that is practicable under the circumstances . . . . Here, many class members likely reside nearby Bacci's Berwyn location, so a variety of other means and methods for notice are available. First, in addition to one-time publication in the Chicago Sun Times, the court assumes Plaintiff could publish notice in local publications that serve the Berwyn area . . . . The court also suggests posting the class notice at Bacci, and posting a link to the class notice on Bacci's website . . . .

Variations on this approach have been followed and approved in many EFTA and FACTA cases, summarized as follows:

| Case | Notice |
|------|--------|
| *Howard v. The Canandaigua National Bank and Trust Co.*, 09-cv-6513 (W.D.N.Y.)(EFTA) | Publication notice one time in *Democrat and Chronicle*. Notice on Website hosted by Class Counsel. |
| *Parker v. Suntrust Bank*, 09-cv-706 (M.D.Tenn.)(EFTA) | Publication notice two times in the *Tennessean*. Posted Notice on ATMs at issue. Notice on website hosted by Defendant. |
| *Parker v. First-Citizens Bank and Trust*, 09-cv-00588 (M.D.Tenn.)(EFTA) | Publication notice two times in *Tennessean*. Posted Notice on ATMs at Issue. Notice on website hosted by Defendants. |

| Case | Notice |
|------|--------|
| *Popovic v Dollar Bank,* 10-cv-432 (W.D. Pa.)(EFTA) | Publication notice one time each in *Sun Star & Courier, Sun Post & News Sun, News Herald, North Journal & McKnight Journal & Pennysaver (Corapolis/Moon).* Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Nolf v. Allegheny Bank of Pittsburgh*, 09-cv-645 (W.D. Pa.)(EFTA) | Publication notice one time in *Pittsburgh Post-Gazette*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Dover v. GNC Federal Credit Union,* 09-cv-810 (W.D.Pa.)(EFTA) | Publication notice one time in *New Castle News*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Dragotta v. Northwest Bancorp, Inc. d/b/a Northwest Savings Bank*, 09-cv-632 (W.D. Pa.)(EFTA) | Publication notice one time each in *Sewickley Herald, Butler Eagle, Johnstown Tribune-Democrat, The Evening Sun, Geauga Co. Maple Leaf, Ken-Ton Record Advertiser* and *Cheektowaga BEE*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Jackman v. Global Cash Access Holdings, Inc.*, 09-cv-897 (W.D.Pa.)(EFTA) | Publication notice one time in national edition of *USA Today* and one time in the monthly magazine *Casino Player*. Notice on website hosted by Class Counsel. |
| *Popovic v. USX Federal Credit Union,* 09-cv-631 (W.D. Pa.)(EFTA) | Publication notice one time in *Cranberry Eagle*. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Polevoy v. Devon Bank*, 08-cv-4822 (N.D. Ill.)(EFTA) | Publication notice one time in *Pioneer Press Newspapers* in Lake Shore & North Shore. Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |
| *Stone v. Corus Bank, N.A.*, 08-cv-1746 (N.D.Ill.)(EFTA) | Publication notice one time in *Chicago Sun Times* and *Chicago Tribune.* Posted Notice on ATMs at Issue. Notice on website hosted by Class Counsel. |

| Case | Notice |
|------|--------|
| *Anthony v. Fifth Third Bank (Chicago)*, 08-cv-4359 (N.D.Ill.)(EFTA) | Publication notice one time in *Chicago Tribune* or *Sunday Sun Times*.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by class counsel. |
| *Arbelo v. Charter One Bank*, 08-cv-1516 (N.D.Ill.)(EFTA) | Publication notice one time in *Chicago Sun Times, Hoy* and *Pioneer Press*.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by Class Counsel. |
| *Escalante v. Lincoln Park Savings Bank*, 08-cv-6152 (N.D.Ill.)(EFTA) | Publication notice one time in *Chicago Sun Times, Hoy, Chicago Reader* and *Polish Daily News*.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by Class Counsel. |
| *Bruner v. AmericaUnited Bank & Trust Company*, 08-cv-124, (N.D. Ill.)(EFTA) | Publication one time in *Pioneer Press* in Northwest zone.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by Class Counsel. |
| *Marsh v. ATM Capital Management Inc.*, 07-cv-5808, (N.D. Ill.)(EFTA) | Publication one time in *Chicago Tribune*, Targeted City Zone section.<br>Posted Notice on ATMs at Issue.<br>Notice on website hosted by Class Counsel. |
| *Klingensmith v Max & Erma's Restaurants*, 2007 WL 3118505 (W.D.Pa.)(FACTA) | Publication on Sunday in leading newspaper in Atlanta, GA, Charlotte, NC, Cincinnati, OH, Cleveland, OH, Lansing, MI, Lexington, KY, Louisville, KY, Pittsburgh, PA and Chicago, IL. |
| *Sinatra v. Coventry Restaurant Systems, d/b/a Hyde Park Steak House*, 07-cv-445 (W.D. Pa.)(FACTA) | Publication twice, consecutive Sundays in leading newspapers in Pittsburgh, Cleveland & Columbus. |
| *Ehrheart v. Pro Nebraska, Inc., d/b/a Pro Image*, 07-cv-447 (W.D. Pa.)(FACTA) | Publication twice, consecutive Sundays in Sports Section of Pittsburgh Post Gazette and Pittsburgh Tribune Review. |

9

| Case | Notice |
|------|--------|
| *Pivarnik v. Lamrite West, Inc. d/b/a Pat Catan's Craft Center*, 07-cv-321 (W.D. Pa.)(FACTA) | Publication twice, consecutive Sundays in leadings newspapers in Pittsburgh, PA, Cleveland, OH, Canton, OH, Akron, OH, Youngstown, OH, Parkersburg, WV, Springfield, OH, and Toledo, OH<br>Place Notice in Customer Bags for 45 days |
| *Reed v. Whole Enchilada, Inc. d/b/a big Burrito Restaurant Group*, 07-cv-357 (W.D. Pa.)(FACTA) | Publication once in daily newspaper in Pittsburgh, PA, State College, PA, Philadelphia, PA and Columbus, OH on day of Defendants' choosing, other than Sunday.<br>Promotional Advertisement published in student newspapers at University Pittsburgh, Ohio State University, Pennsylvania State University and University of Pennsylvania on 3 days beginning same week of Summary Notice.<br>Internet Notice placed by Defendant. |
| *Curiale v. Hershey Entertainment & Resorts Company*, 07-cv-651 (M.D. Pa.)(FACTA) | Publication once each weekday of *Harrisburg Patriot-News* and a weekend edition of *USA Today* (Mid-Atlantic region edition).<br>E-mail notice in a prominent location as part of a e-newsletter to designated recipients of Hershey's SWEETMAIL.<br>Website. |
| *Ehrheart v. Pfaltzgraff Factory Stores, Inc.*, 07-cv-01433 (E.D. Pa.)(FACTA) | Publication once in the "Life" section of the national Monday edition of *USA Today*.<br>On-site notice on all Pfaltzgraff Factory Stores Cash registers for 30 days.<br>Website. |
| *Long v. Joseph-Beth Group, Inc.*, 07-cv-443 (W.D. Pa.)(FACTA) | Publication once in leading newspapers of general circulation in Charlotte, NC, Cincinnati, OH, Cleveland, OH, Lexington, KY, Memphis, TN, Nashville, TN and Pittsburgh, PA.<br>On-site notice at stores at issue for 30 days. |
| *Carusone v. Joe's Crab Shack Holdings, Inc.*, 07-cv-320 (W.D. Pa.)(FACTA) | Publication twice in consecutive weekend editions in the Legal Notice section of *USA Today*.<br>On-site notice (sign) posted at vestibule of all restaurants at issue.<br>Internet hosted by Defendant for 75 days. |

10

| Case | Notice |
|------|--------|
| *Palamara v. Kings Family Restaurants*, 07-cv-317 (W.D. Pa)(FACTA) | Publication twice on consecutive Sundays in Lifestyle Section (On the Go) of the *Pittsburgh Post-Gazette* and *Steubenville Herald Star* and *Altoona Mirror*. |
| *Goldin v. Uni-Marts, LLC*, 07-cv-666 (W.D. Pa.)(FACTA) | Publication twice on consecutive Sundays in *Pittsburgh Post Gazette, Harrisburg Patriot News and Buffalo News*. On-site notification (sign) at stores at issue directing to company's Website for 75 days. Internet hosted by Defendant. |

Consistent with the conclusions of these various courts throughout the country, the Notice set forth in the Settlement Agreement, as bolstered by the suggestions made by the Court in the Preliminary Approval Order, represents the best practicable notice in the context of the claims in dispute.

**B.    The Proposed Class Meets the Requirements Under *Amchem* For Certification Of A Settlement Class**

Before granting final approval of a settlement in a case where a class has not yet been certified, the court must determine whether the class proposed for settlement purposes is appropriate under Rule 23. *See Amchem Prods. v. Windsor*, 521 U.S. 591, 620 (1997); *Manual* §21.632. "To proceed as a class action, the litigation must satisfy the four prerequisites of Rule 23(a) as well as at least one of the three requirements of Rule 23(b)…These prerequisites are otherwise known as (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation." *In re Aquila ERISA Litig.*, 237 F.R.D. 202, 207 (W.D. Mo. 2006).  In certifying a settlement class, however, the court is not required to determine whether the action, if tried, would present intractable management problems, "for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620; *see also* Fed.R.Civ.P. 23(b)(3)(D).  Here the proposed class meets all of the requirements of Rule 23(a) and satisfied the requirements of Rule 23(b)(3).  Therefore,

11

Plaintiff now requests that the Court grant final certification of the proposed class for settlement purposes only.

### C. The Requirements Of Rule 23(a) Are Met

"Rule 23(a)(1) requires that the proposed class be 'so numerous that joinder of all members is impracticable.'" *Aquila ERISA Litig.*, 237 F.R.D. at 207 (quoting Fed.R.Civ.P. 23(a)(1)). Defendant acknowledges that there are thousands of transactions at issue and, thus, the existence of numerosity is readily apparent. *See, e.g., Jones v. Novastar Fin., Inc.*, 257 F.R.D. 181, 186 (W.D.Mo. 2009)("The proposed class numbers over one thousand persons…[Plaintiff] has satisfied Rule 23(a)(1).").

The proposed class also meets the commonality requirement of Rule 23(a)(2), which requires that "there are questions of law or fact common to the class." "This requirement imposes a light burden on the plaintiff seeking class certification and does not require commonality on every single question raised in a class action." *Aquila ERISA Litig.*, 237 F.R.D. at 207. "Commonality may be satisfied 'where the question of law linking the class members is substantially related to the resolution of the litigation even though the individuals are not identically situated." *Id.*

Here, Plaintiff's Complaint specifically lists the common issues implicated by his claims:

    a. Whether, under 15 U.S.C. § 1693b(d)(3)(A) and 12 C.F.R. 205.16, Defendant was, at all relevant times, an automated teller machine operator that imposed a fee on consumers for providing host electronic fund transfer services to those consumers;

    b. Whether Defendant complied with the notice requirements of 15 U.S.C. § 1693b(d)(3)(B) and 12 C.F.R. 205.16; and,

> c. Whether Plaintiff and members of the class are entitled to statutory damages, costs and/or attorneys' fees for Defendant's acts and conduct.

(*See* Complaint, ¶33).

Plaintiff also meets the typicality and adequacy requirements for serving as class representative. Rule 23(a)(3) requires that "the claims…of the representative parties are typical of the claims…of the class…" Fed.R.Civ.P. 23(a)(3). "This subsection simply requires 'a demonstration that there are other members of the class who have the same or similar grievances as the [class representative].' The burden of demonstrating that Rule 23(a)(3) is met is 'fairly eas[y]…so long as other class members have claims similar to the named plaintiff.'" *Aquila ERISA Litig.*, 237 F.R.D. at 209 (citation omitted; alterations by *Aquila* court). Typicality, however, does not require that the claims be identical. "When finding a class representative's claims typical, it is not necessary to first find that all putative class members share identical claims." *Jones*, 257 F.R.D. at 187.

Here, the named Plaintiff's claims are typical of those of the Class because they derive from an identical factual predicate, and they are based upon the same legal theory. Plaintiff's interests are co-extensive with those of the class, since every class member claims injury resulting from the same, uniform alleged misconduct by Defendant. Plaintiff has shown that his claims "emanate from the same legal theory or offense as the claims of the class," thereby satisfying the typicality requirement. *Doran v. Missouri Dep't of Social Servs.*, 251 F.R.D. 401, 405 (W.D.Mo. 2008).

The fourth and final requirement of Rule 23(a) is that the "representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). The focus of the adequacy inquiry is whether "(1) the class representatives have common interests with the

members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Jones*, 257 F.R.D. at 191 (citing *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982)).

Here, there are no conflicts of interest or other antagonisms between Plaintiff on the one hand and Class Members on the other. *See Jones*, 257 F.R.D. at 192. All were individuals with the mutual incentive to establish the alleged violation of EFTA. All class members were impacted by the practices at issue in an identical manner.

In addition, Plaintiff's counsel have provided fair and vigorous representation for the Class. Plaintiff's Counsel have substantial experience in similar consumer class action litigation and have regularly been deemed to be adequate class counsel. *See White v. Martin*, 2002 WL 32596017, at *10 (W.D. Mo. Oct. 3, 2002)("In the absence of proof to the contrary, courts presume that class counsel is competent and sufficiently experienced to vigorously prosecute the class action.").[8]

### D.    The Requirements Of Rule 23(b) Are Met

#### 1.    Common questions of law and/or fact predominate over questions affecting individual class members

Finally, the proposed class meets the requirements of Rule 23(b)(3). Rule 23(b)(3) "provides that a class action may be maintained if the court finds the questions of law or fact common to members of the class predominate over the questions affecting only individual class members, and a class action is a superior method for fair and efficient adjudication of the dispute." *In re St. Jude Medical, Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005). "The requirement of Rule 23(b)(3) that common questions predominate over individual questions 'tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Blades v.*

---

[8] *See* Motion for Preliminary Approval at Exhibit 2.

*Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)(quoting *Amchem*, 521 U.S. at 623). "The common questions need not be determinative, but the efficiency and economy of class adjudication must outweigh the difficulties and complexity of individual treatment of class member claims." *Esler v. Northrop Corp.*, 86 F.R.D. 20, 38 (W.D. Mo. 1979). The "fundamental question is whether the group aspiring to class status is seeking to remedy a common legal grievance." *Carpe v. Aquila, Inc.*, 224 F.R.D. 454, 458 (W.D.Mo. 2004).

As described above, Plaintiff and the Class allege statutory injury by a common course of conduct. These allegations provide the common issues required to ensure predomination of common questions over individual issues. Similarly, the damage issues in this case are especially well suited for class-wide resolution because every Class Member seeks the same quantum of statutory damages which is dependent upon a unitary demonstration of Defendant's noncompliance with the ATM fee disclosure requirements of EFTA. *See In re NASDAQ Market-Makers Antitrust Litig.*, 169 F.R.D. 493, 522 (S.D.N.Y. 1996)

### 2.    A class action is the superior means to adjudicate the claims at issue

The Court's final consideration in applying Rule 23(b)(3) is whether a class action is the superior method for adjudicating the case. Fed. R. Civ. P. 23(b)(3) lists the factors pertinent to the superiority determination as follows:

> (A) the interest of the members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of the class action.

All four of these factors support certification here for settlement purposes.

### a. Most class members have an insufficient interest to justify individual lawsuits

Certification permits a class-wide adjudication of the claims of similarly situated claimants when individual prosecution would not be cost-effective. The Supreme Court has frequently noted the need for aggregate representation through certification if such claims are to be addressed. *Deposit Guaranty Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985). This clear theme in Supreme Court jurisprudence was reiterated in *Amchem*, wherein the Court stated:

> The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.

*Amchem*, 521 U.S. at 617 (quoting *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997)).

Effective private enforcement requires mechanisms to aggregate these relatively small but important claims lest the relatively small stake of each individual consumer present an insurmountable hurdle to recovery. Aggregate litigation is therefore indispensable if consumers are to play a role in deterring conduct identified by Congress as being generally harmful, and therefore serves as an important compliment to public and quasi-public enforcement procedures.

This consumer action against Defendant on behalf of ATM users presents many of these elements. The class action mechanism is meant to afford remedies to claimants who cannot otherwise prosecute their claims in a cost-effective manner. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 155 (1982). The claims at issue here are such that class relief is the only realistic alternative to no relief at all for the vast majority of Class Members.

16

**b.** **The extent and nature of any other litigation commenced by class members**

There are no other pending class actions against Defendant asserting the claims here in dispute. Therefore, this factor supports settlement class certification.

**c.** **This Court is an appropriate forum for resolution of the claims in dispute**

There is no question that this Court has subject matter jurisdiction over the claims alleged in this case, personal jurisdiction over the Parties and that personal jurisdiction extends to members of the Class under the Due Process Clause because the notice provided in this case was constitutionally sufficient. *Shutts*, 472 U.S. at 811-812

**d.** **Manageability**

The Supreme Court confirmed in *Amchem* that the manageability of a class action at trial is an irrelevant consideration in the context of a proposed settlement class, because the proposal is that there be no trial. *Amchem*, 521 U.S. at 620. Therefore, the Court need not consider manageability as part of its settlement approval calculus.

**V.** **THE PROPOSED SETTLEMENT EXCEEDS THE STANDARDS FOR JUDICIAL APPROVAL**

**A.** **Final Approval Of The Settlement Is Within The Sound Discretion Of The Court And Is Favored By Strong Judicial Policy**

In addition to determining whether the proposed settlement class satisfies the relevant requirements of Fed. R. Civ. P. 23(a) and (b), the Court must separately conclude that the proposed settlement is "fair, reasonable and adequate." *In re Wireless Telephone Federal Cost Recovery Fees Litigation*, 396 F.3d 922 (8th Cir. 2005)("*Wireless Cost Recovery* . "Under Federal Rule of Civil Procedure 23(e), the district court acts as a fiduciary, serving as a guardian

of the rights of absent class members." *Id.* at 932. A number of well-settled factors guide the Court's Fairness review.

While the approval of a proposed class action settlement is a matter within the sound discretion of the Court, a strong judicial policy favors resolution of litigation short of trial. *In re General Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 805 (3d Cir.), *cert. denied*, 516 U.S. 824 (1995)("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

The Settlement at issue here enjoys a presumption that it is fair and reasonable because it is the product of arm's-length negotiations conducted by experienced counsel who are fully familiar with all aspects of class action litigation. *Manual for Complex Litigation, Third* § 30.43 (1995). Although a court must independently evaluate a proposed settlement, the court should credit the judgment of experienced counsel in doing so.

Another court has noted:

[T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned . . . . The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators.

*****

Neither the district court nor this court is empowered to re-write the settlement agreed upon by the parties. We may not delete, modify, or substitute certain provisions of the consent decree. Of course, the district court may suggest modifications, but ultimately, it must consider the proposal as a whole and as submitted. Approval must be given or withheld . . . . In short, the settlement must stand or fall as a whole.

*Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625, 630 (9th Cir. 1982), *cert. denied*, 459 U.S. 1217 (1983); *see also*, *Lake v. First Nationwide Bank*, 900 F. Supp. 726, 732 (E.D. Pa. 1995)("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class'")(*citing Austin v. Pennsylvania Dep't of Corrections*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995).

Here, Class Counsel are fully familiar with the facts and law applicable to this litigation and are well acquainted with the prosecution of class actions, generally, and with class-based consumer fraud claims, in particular. Before entering into the Settlement, Class Counsel took into account, among other things, the factors that the Court of Appeals for the Eighth Circuit has identified as being relevant to the determination of whether a class settlement is fair, reasonable and adequate. The evaluation of those factors resulted in Class Counsels' recommendation that the proposed settlement be accepted as fair, reasonable and adequate as is set forth below.

**B.      The Settlement Is Fair, Reasonable And Adequate**

The Court is required to consider four factors in determining whether a settlement is fair, reasonable and adequate: (1) the merits of the plaintiff's case, weighed against the terms of the settlement; (2) the defendant's financial condition; (3) the complexity and expense of further litigation; and (4) the amount of opposition to the settlement. *Grunin v. International House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). The most important consideration in deciding whether a settlement is fair, reasonable and adequate is 'the strength of the case for plaintiffs on the merits, balanced against the amount offered in settlement. *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1150 (8th Cir. 1999).

Regarding factor number (1), two issues should be noted at the outset. First, it is important to note that under the EFTA's statutory damage provision as applied to class actions,

19

the Court has substantial discretion regarding an award of monetary damages. Specifically, 15

U.S.C. § 1693m states in relevant part:

> (a) Individual or class action for damages; amount of award
>
> Except as otherwise provided by this section . . ., any person who fails to comply with any provision of this subchapter with respect to any consumer . . . is liable to such consumer in an amount equal to the sum of—
>
> \*          \*          \*          \*
>
> **(B)  in the case of a class action, such amount as the court may allow, except that (i) as to each member of the class no minimum recovery shall be applicable, and (ii)  the total recovery under this subparagraph in any class action or series of class actions arising out of the same failure to comply by the same person shall not be more than the lesser of $500,000 or 1 per centum of the net worth of the defendant . . . .**

(emphasis added).

This statutory grant of judicial discretion significantly informed the damage calculus that was used to reach the proposed settlement of this matter. Specifically, Plaintiff has assumed that absent evidence of intentional non-compliance with the EFTA's disclosure requirements (and there is no such evidence in this case), the appropriate quantum of damages in an EFTA class case is disgorgement of the total surcharges collected, discounted to reflect the risks of litigation. That calculus, in combination with the statutory cap for class action damages in the amount of $500,000.00, is what was used to arrive at the size of the fund reflected in the proposed settlement.

Second, the risk of litigation is more than just hypothetical. A judge in the United States District Court for the Western District of Pennsylvania granted Rule 12 motions in two similar EFTA cases involving state-chartered bank defendants (Mid-Missouri Bank is a state-chartered bank). *See Helkowski v. Sewickley Savings Bank*, 09-633 (W.D. Pa. October 15, 2009)(McVerry, J.); *Dragotta v. West View Savings Bank*, 09-627 (W.D. Pa. August 24,

2009)(McVerry, J.). While counsel for Plaintiff in this action (who also represented the *Helkowski* and *Dragotta* plaintiffs) successfully appealed the dismissal of those two cases to the Third Circuit, the dismissal of those cases illustrates the type of risks that Plaintiff faced in this case.[9]

Against this backdrop, the total amount of ATM fees multiplied by the number of transactions at issue for the one year period prior to the filing of the Complaint equaled $300,982.00. That amount was discounted to reflect the risks of litigation, resulting in a settlement fund in the amount of $260,000.00, payable to each participating class member *pro rata* in an amount not to exceed $100.00 per class member. The Settlement Agreement requires that all residual amounts in the settlement fund will be disseminated to two charities selected by the parties, with no reverter to the Defendant.

Finally, it is important for the Court to recognize that Plaintiff's claims on behalf of the Class seek only statutory damages, not compensatory damages. The claims rate for this proposed settlement, like the claims rates in almost all similar settlements for statutory damages, will be low. However, because of the fact that no class member has sustained any economic injury, this factor is largely irrelevant to whether the proposed settlement is fair, adequate and reasonable. Another District Court has noted this fact in the EFTA context as follows:

> [E]ven if a large number of claims were not filed, compensating class members is only one consideration. Statutory damages serve a punitive, as well as compensatory, purpose. *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352-53 (1998)('Statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment.') Worst case scenario, the statutory damages are distributed through a cy pres recovery scheme. *See id.* at 345 ('Cy pres, or fluid, recovery is a procedural device that distributes money damages either through a market system (e.g. by reducing charges that

---

[9] Proposed class action settlements were recently negotiated in both of these cases, and the District Court has preliminarily approved both of those settlements. The settlements are analogous to the proposed settlement in this case in all material respects.

were previously excessive), or through project funding (the project being
designed to benefit the members of the class').

*Burns v. First American Bank*, 2006 WL 3754820, *11 (N.D. Ill. Dec. 19, 2006)(Kendall, J.).

Class Counsel respectfully suggest that the proposed settlement fund is thus easily fair, adequate and reasonable.

Regarding factor (2), while Class Counsel does not doubt that Defendant could withstand a judgment well in excess of the amount of the settlement fund, that fact is irrelevant given the existence of the $500,000 statutory cap on damages in class actions under the EFTA. Therefore, the parties respectfully suggest that this factor is neutral.

Regarding factor (3), the complexity and expense of further litigation in this case is readily apparent. As noted, other similar EFTA cases have been litigated through appeals, thereby significantly increasing costs, expenses and the burden on the judiciary. The proposed settlement before this Court will avoid those unnecessary burdens, but still offers relief to the Class that is fair, adequate and reasonable.

Regarding factor (4), there have been no objections to the proposed settlement, and no requests for exclusion. Therefore, this factor supports final approval.

In short, Plaintiff respectfully suggests that the proposed Settlement terms are fair, reasonable and adequate and represent a responsible and appropriate compromise of this litigation. Defendant concurs.

## VI.   **CONCLUSION**

For all of the foregoing reasons, Plaintiff respectfully requests that the Court enter the Proposed Final Approval Order and Proposed Final Judgment, approving the proposed Settlement.

Respectfully submitted,

THE BUXNER LAW FIRM OF COUNSEL
TO WALTHER/ZWIBELMAN LAW
ASSOCIATES

By: /s/ Evan D. Buxner_____
    Evan D. Buxner

230 South Bemiston Avenue, Suite 500
Clayton, MO 63105
Telephone: 314.725.9595
Facsimile: 888.851.4940

CARLSON LYNCH LTD

By: /s/ R. Bruce Carlson_____
    R. Bruce Carlson
    Gary F. Lynch
    Stephanie K. Goldin

231 Melville Lane
P.O. Box 367
Sewickley, PA 15143
Telephone: 412.749.1677
Facsimile: 412.749.1686

ATTORNEYS FOR PLAINTIFF
DONALD C. THOMAS